UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

2018 OCT 19 PM 3:29

M. REGINA THOMAS
CLERK

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | 18-59411 BEM |
| JAMES D. CUNNINGHAM | ) | Chapter 13 |
| | ) | |
| DEBTOR PLAINTIFF, | ) | JURY TRIAL DEMAND |
| | ) | ADV PROCEEDING |
| Hon Berryl A. Anderson in her | ) | 18-5260-BEM |
| Personal and Professional Capacity,) | | |
| Hon Barbara Ellis-Monro in her | ) | |
| Personal and Professional capacity,) | | |
| Mary Ida Townson in her Personal ) | | |
| and Professional capacity, 5 J. Doe ) | | |
| Court employes, Oksana Sepich, | ) | |
| Najarian Capital, LLC, Freedom | ) | |
| Mortage Corp, Rubin Lublin, LLC,) | ) | |
| | ) | |
| | ) | |
| DEFENDANTS | ) | |

AMENDED

## 28 U.S.C. TITLE 11 COMPLAINT FOR VIOLATION OF and INTERFERENCE WITH CORE BANKRUPTCY PROCEEDING, COLOR OF LAW, COLOR OF OFFICE, COLLUSION, CONSPIRACY, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, SANCTIONS, SECTION 105 RELIEF, THEFT, GEORGIA LAND LAWS, DISCOVERY, QUIET TITLE, CONTEMPT, INJUNCTIVE RELIEF, PUNATIVE DAMAGES, DECLARATORY JUDGMENT, 42 USC 1983, NEGLIGENCE

Debtor-Plaintiff James D. Cunningham (Cunningham), hereby files his

Complaint in the above styled action nad shows the Court as follows:

Cunningham realleges and incorporates by reference, in their entirety, 18-

59411-BEM, 18-5223 and CAN 18D55396.

PARTIES

**Debtor-Plaintiff James D.Cunningham** is Debtor in 18-59411 and Debtor-

1

Plaintiff in 18-5223, and Defendant in CAN No. 18D55396 (the „Magistrate Court case"), a civil action comenced on August 27, 2018, and served on August 28, 2018, in the Magistrate Court of Dekalb County.

**Defendant Hon Berryl A. Anderson** was the presiding judge in the now non-existent, removed Magistrate Court case and is named here in both her personal and professional capacity.

**Defendant Hon Barbara Ellis-Monro** is the presiding judge in the above styled action as well as 18-5223, and is named here in both her personal and professional capacity.

**Defendant Mary Ida Townson** is Trustee in the above styled action, and is named here in both her personal and professional capacity.

**5 J. Doe Bankruptcy Court Defendants** are as of yet unknown.

**Defendant Oksana Sepich** is associated with Najarian Capital, LLC, purchaser of subject property at the void foreclosure sale.

**Defendant Najarian Capital, LLC is the** purchaser of subject property at the void foreclosure sale in violation of the Automatic Stay .

**Defendant Freedom Mortgage Corp** is the alleged note holder on the subject property that held the void foreclosure sale in violation of the Automatic Stay.

**Defendant Rubin Lublin, LLC** is the law firm representing Freedom Mortgage, LLKC, and that effected the void foreclosure sale of the subject property, and in violation of the Automatic Stay.

## JURISDICTION AND VENUE

Jurisdiction and Venue are proper in this Court. All actionable conduct

complained of concerns transactions and property, as well as Defendants and Debtor-Plaikntiff all found residing and/or doing business within the jurisdiction of this Court, and this actionable conduct rises out of a core proceeding of Debtor-Plaintiff's Chapter 13 Bankruptcy filed in this Court.

## FACTS RELATIVE TO ALL COUNTS

Cunningham, who holds the lease betwen himself and the Titleholder, Joshua G. Crowe as well as a Power of Attorney (POA) between he and Crowe, which specifically grants Cunningham an ownership interest in the subject property, by including that the POA has a clause demanding that the legal document is „Coupled with an interest", with said interest enured to Cuningham's benefit.

This interest is two fold: 1) Cunningham and Crowe agreed between themselves that at some future point in time after allowing for improvement of the property and hopefully an ongoing increase in value, Cunningham would be compensated in such a manner and amount to be decided at that future, as yet unknown, point in time. 2) John Turner (Turner), who had issued a warranty deed on the property to Crowe would be compensated by Cunningham, at some future point for past and ongoing expenditures still being made by him relative to the property.

The subject property is Cunningham's childhood home.

The subject property was deeded by warranty deed from Cunningham's now deceased mother, Nancy Cuningham (Mrs. Cunningham), under a handshake agreement between the two that amounted loosely to a reverse mortgage. Cunningham had promissed his mother he would „keep her in her house" until her passing, and that he would also facilitate the deeding of the property, at some point,

3

to her only grandson, Crowe, since Cunningham held a number of properties at the time, and had no issue with any such inheritance skipping a generation.

That promise was made prior to the 2008 bank-induced real estate market collapse, and when Cunningham could easily afford to do so. When it became obvious Mrs. Cunningham woiuld outlast both her and Cunningham's limited remaining resources, she struck the deal with Turner.

The handshake agreement basically was designed to let Turner hold title to the property, as it appeared, primarily due to the property values at the time still being in decline, and it was most likely at least he equity in the property would be used up.

The agreement further stipulated that at some future point, were the property value be such as to cover Turner's expenditures, he would deed the property back to either Crowe, Cunningham, or some other individual or entity of their choosing.

While this agreement between Mrs. Cunningham and Turner was a verbal agreement, Turner and Cunningham agreed between themselves that Turner would issue a Power of attorney over the property, which, similar to that between Crowe and Cunningham, was coupled with an interest inurred to Cunningham's benefit, so as to legally acknowledge an ownership interest in the property, should values go up enough, or other circumstances eventually allow for the considered transfer of the property back to the Cunningham family, as well as to permit Cunningham to facilitate all renovations, upkeep, listing and or rental agreements, etc. concerning the property.

Cunningham and Crowe, in addition to granting Cunningham a small ownership interest in the property, created a lease between the two, which is still in

force.

Cunningham has taken on roommatres in order to cover the note, upkeep, utilities and other expenses relative to the property.

Cunningham was forced into bfiling bankruptcy due to actions of a „deadbeat tenant", Nathaniel Garrisson, he allowed to move in, and eventually had to file a dispossessory action against, to get him out.

Between the serving of the action upon Garrison and the hearing date, Garrisson retaliated against Cunningham repeatedly by stealinghis car keys, a cord to his laptop, his wallet, his cellphone and the tag off of his car.

The day of the hearing on teh dispossessory action against Garrison, Garrisson sliced Cunningham's tier so he could not get to Court.

Cunningham called DKPD to get a police report, in order to prove he could not get to court. Further, Cunningham called the Dekalb County Magistrate Court's civil clerk to ask them to reschedule the hearing.

The coiunter clerk he spoke with insisted that no message couild be gotten to eihter the judge or clerk, as they had alreazdy gone to the courtroom. Cunningham argued that he had done this other times in different courts, and you can always get such a message ot the judge. The counter clerk insisted that the only thing she could do was send the clerk an email, which she would not receive until aftger court. The couter clerk fiurther stated that in her popinion, the best thing for Cunningham to do in this instance, would be to *write the judge a letter*!

Not able to attend th hearing, it was dismissedby the court.

Cunningham filed a motion for reconsideration, due to excusable neglect,

inclusive of an approximately 20 page verified motion going into great detail of the retaliation against him by Garrison, and such that easily proved excusable neglect. and a heraing was set.

Garrison did not show up for the hearing.

The judge pretty much called Cunningham a liar, saying that he indeed could always get a message at the bench. He also asked the clerk if her office received any phone call frfom me, and she lied adn said no, they received no such phone call.

Phone records will easily prove the 5-10 minute conversation between Cunningham's phone adn that of the clerk's office.

The judge also refused to allow Cunningham to ask for a judgment due to Garrison not showing up, due to the judge's position that as far as he knew, Cunningham intercepted and withheld from Garrison, the mailed notice of the hearing – an absurd, unfounded and unsuported position.

The money judgment would have covered almost all of the late payments due on the house note, and with the Court's improper refusal to grant it, the house went into froeclosure, which caused Cunningham to file bankruptcy.

So, not only does the Magistrate Court and it's judges in the removed dispossessory action act without jurisdiction in that removed action, that very same Magistrate Courtt is the proximate cause of this bankruptcy petition being necessary to file.

Cunningham filed his Chapter 13 Bankruptcy case in this Court and was granted an automatc stay of relief by the Court, which encompasssed the subject property, 4313 Executive Drive, Stone Mountin GA 30093.

Cunningham hired professional preparer Darryl Smith (Smith) to handle the BK filing for him.

Unbeknownst to Cunningham, Smith has a history of abuses aganst clients like Cunningham, but has been allowed to continue doing business unabated, by the Court, even though the Court is well aware of Smith's history, and repeated 'suggestions' of sanctions upon Smith hjave not been enforced and therefore have not been a deterrent to Smith's actionable conduct.

Smith converted some of the cash Cunningham gave him to apply to cunningham's court fees, to his own personal use.

The Court and all Defendants have admitted that Smith did fax the Court issued notice of the automatic stay, as well as leases Cunningham holds on the subject property, to Defendant Rublin Lublin, LLC well in advance of the scheduled sale, that there was no legal reason for the sale to not be pulled.

Defendants Rubin Lublin, LLC and Freedom therefore knowingly viloated the automatic stay and violated theft, conversion and GA land laws by doing so.

Defendants Najarian Capital (Najarian) and Oksana Sepich (Sepich), upon bering noticed by Cunningham of the illegal sale, did nothing to remove themselves from becoming accessories after the fact.

Defendants Ellis-Monro and Townson similarly have participated in the actionable conduct designed to ignore the fact that the automatic stay was in place, adn that Cunningham did have such an interest inthe property as to allow it to pass into his estate.

Najarian and Sepich, from the void sale forward, have repeatedly vilolated

7

bankruptcy law by harassing Cunningham and making demands upon him, which were not legally ripe, and even afer repeated warnings of such by Cunningham, including but not limited to filing the Magistratre court Action before the applicable order by this Court was ripe for enforcement.

Defendants Ellis-Monro and Townson have repeatedly acted improperly and also violating Cunningham's rights to due process.

Defendants have acknowledged being on notice of Cunningham's ongoing medical condition, yet refused to honor his motion to continue hearing and supporting medical letter.

The hearing was held, and Defendant Ellis-Monro ruled in one order, that Cunningham had no due process right to be heard at the hearing, and only because she had somehow 'devined' that Cunningham had only subjective, instead requisite 'objective evidenc to present the Court.

The second order was relevant to Defendant Najarian's motion to validate foreclosure, and Cunningham's motion to deny same.

Defendant Ellis-Monro gave absolutely no legal authority in support of denying Cunningham's right to be heard on that matter, other than to simply say it was discussed in the record below.

Defendant Ellis0-Monro, did however, rule that Cunningham's lease, along with her unupported argument against Cunningham's intentions in filing his bankruptcy, also completely ignored teh oft raised fgact concerning teh POA between Cunningham Adn Crowe, and such that has a clause 'couopling with an interest' Cuinningham and the title to the property, which easily caused the propert to pass into his estate.

8

All actions by Ellis-Monro have been adnything but judicious, adn anything but biased.

In subsequent orders in resonse to Cunningtham challenging the two initial ordedrs that unconstitutionally deprived him of his right to be heard, Defendant Ellis_monro has repeatedly refused to address teh legal issues raised byu Cunighm in his motion to amend judgment, and instead, ahd simply made up „new" reasons as to why whe ruled as she did.

All only in effort to deprive Cunningham of his right to be heard.

This actionable conduct was a precuror to wshat would come, adn litterally every step in this case has been Defendants trying to see how quickly they can run Cunningham out of Court, with Cunningham doing the best he can to counter these unconstitutional efforts by these Defendants.

Cunningham properly removed the Magistrate court Action to this Court and properly filed the requisite Notiec of Removal in the Magistrate Court, the day prior to a scheduled hearing in the Magistrate Court Action, and additionally emailed notice fo the emoval to Sepich anad Najarian.

The action was removed to this Court, and given the Adv. Pro. No. 18-5260 on October 15, 2018 filed and entered at 4:11 p.m. At that exact time, the Magistrate Court case 18D55396 CEASED TO EXIST, and the Dekalb County Magistrate Court no longer had personal or subject matter jurisdiction.

Accordingly, all actions taken in the defunct Magistrate action, are VOID ab initio, inclusive of all orders setting down hearings.

All individuals continuing to act, in any manner, in this defunct action were

9

properly noticed, adn those actions are taken improlperly, and in their personal capacities.

All parties to the above styled have been given constructive notice of Cunningham's ongoing and severe health problems, and each have acted in concert to cause these problems to worsen.

Hon Berryl A. Anderson (Andedrson) knew the case had been removed to this Court, stripping her of all jurisdiction, but she held the scheduled hearing, in her personal capacity, anyway.

Anderson ignored Cunningham's demands the hearing stop, that that court had no jurisdiciton not only for fedeeral reasons, but for improper actions by Najarian and Sepich, such that stripped them of satanding to bring the action, and stripped that court of jurisadiction to preside over it.

On one occasion, Anderson had a court employee allegedly called this Court, and said they told her to go ahead, that nothing going on in her court had anything to do with what was going on in this Court – even though both were actually considering the exact same case – but it had been removed from magistrate to bankruptcy, this Court pobviously knew this, but allegedly told Defendant Anderson to go anhaead, without jurisdiction, adn in violation o fCunningham's rights to due process, adn hold the hearing in the defunct case, dan take any action she chose, and with Defendant Ellis-Monro's blessing and instruction.

Cunningham repeatedly raised the lack of jurisdiction argument, and Anderson eventually called this Court herself, returning to repeat that this Court had instructed her to gontinue presiding over the case it knew sjhe had no jurisdiction over, and to

10

do so in her personal capacity.

Cunningham's health was very bad that day, and was constantly on the verge of blackikng out, from lack of oxygen. As a result, his eyes would repeatedly roll up towards the ceiling, adn each tme, drew a loud verbal admonition from Anderson that he was not listening to her, that he was not paying atention to her.

She would not stop her abuse of Cunningha,m who eventually succommed to an extreme asthama attack adn had to be taken to the hjospital by ambulance.

Theree was no emergency oxygen tanks at teh court Cuningham was told, and if the attack had not started to subside on its own, Cunningham would hhave died while waiting on teh ambulance, whcih took quity some time to arrive.

All Defendants have acted in a colussive, conspiratorial effort against Cunningham, and in all counts.

Cunningham was forced to file the removal due only to the actions of these Defendants, and has no reason to believe th combined attacks againsst him will stop anytime soo, and has no choice but to now file this new action, to move the Court for the relief demanded herein, inclusive of immediate injunctive relief in the form of an Order to the Dekalb Magistrate Court to cease all action in 18D55396, including and specifically the hearing scheduled inMagistrate court on October 16, 2018, due to the fact that the order setting down that hearing is void, having been granted with no jurisdcition, as at teh time of the order's issuance, jurisdiction was in this Court, not the Dekalb County Magistrate Court.

All actions, orders adn judgments taken by this Court since, have only been in efort to cause Cunningham to lose, inclusive of even filing in orders at 1:35 a.m. - in

11

the middle of the night.

Defendant Ellis-Monro has not acted in a judicious and unbiased manner, rather, she is trying as hard as she can, every step of the way, and in repeatedly biased fashion, violating Cunningham's rights in the process, pushing him as quickly as she can in remand, back to the magistrate court, that started this attack on Cunningham, in his dispossessory action against Garrison, and all in effort to unconstitutionally deprive Cunningham of his property adn his rights, and to cause him as much physical and emotionjal distress as possible, and Cunningham has most definitely been irreparably harmed by the actions of these Defendants accordingly as well as being unconstitutionally deprived of his property.

Defendants Freedom and Lublinare culpable for all counts due to their partricipation in a foreclosure against a property they knew to be under protection of an automatic stay, as well as all other couts thta actionable conduct rolled into, after th efact.

Defendant Dekalb County is cuupable for the count of negligence due to the actions of its empoloyees, and is also culpable for all actionable conduct rolled into, after the fact.

In consideration of the within and foregoing, Debtor-Plaintiff Cunningham, respectfully moves this Court to grant the maximum relief allowed by law as possible to him under all counts as set forth in the style of this action.

Respectfully submitted this 15th day of October, 2018.

_____
James D. Cunningham
4313 Executive Drive
Stone Mountain, GA 30083